UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN LEE, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>HANOK 18, LLC, *et al.*,<br><br>    Defendants. | Civil Action No. 20-5409 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

  This matter comes before the Court upon an unopposed Motion for Default Judgment (the "Motion") (ECF No. 15) filed by Plaintiffs Steven Lee ("Steven"), Moo Seok Lee ("Mooseok"), and Mi Hyun Yoo ("Yoo") (collectively, "Plaintiffs") against Defendants Hanok 18, LLC and George Odzelashvili ("Odzelashvili") (collectively, "Defendants"). In support of the Motion, Plaintiffs filed a Memorandum of Law. ("Moving Br.," ECF No. 15-1.) The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' Motion will be granted.

**I.  BACKGROUND**

  **A. Factual Background**

  According to their Complaint, Plaintiffs are residents of New Jersey. (Compl. ¶¶ 8–10.) Defendant Hanok 18, LLC is a New Jersey limited liability company that operated a restaurant in New Brunswick, New Jersey. (*Id.* ¶¶ 2–3; Moving Br. at 2.) As alleged, Defendant Odzelashvili is a resident of New Jersey and serves as "president, CEO, CFO, treasurer, or other position as the officer and/or is a director or owner of the business." (Compl. ¶ 5.) As part of his duties,

Odzelashvili had the authority to: "hire and fire Plaintiffs, determine their wages and work schedules, and control the means by which (and whether) Plaintiffs were paid." (Moving Br. at 2; *see generally* Compl. ¶¶ 23–29.) Plaintiffs were all former employees of the corporate Defendant Hanok. (Compl. ¶ 3.)

Steven was hired as a waiter by Defendants. (*Id.* ¶ 31.) His employment began on May 30, 2019, and ended on February 9, 2020. (*Id.* ¶¶ 31–32.) As compensation, he was "to receive $70 per workday at all relevant times." (*Id.* ¶ 35.) Further, at certain times, Steven was required to work for approximately 10.5 hours a day with one hour of break. (*Id.* ¶ 34.) At other times, he was required to work approximately 10 hours a day with one hour of break. (*Id.* ¶ 37.) From May 2019 through November 2019, Steven worked 68 hours per week. (*Id.* ¶ 36.) From November 2019 through February 2020, he worked 50 hours a week. (*Id.* ¶ 39.) Overall, at all relevant times, Steven worked over forty hours a week. (*Id.* ¶ 41.) He alleges he was never notified "by Defendants that any portion of his tip may be deducted from his minimum wage, or that the tips he would receive [if] any [would] be credited towards his minimum wage." (*Id.* ¶ 42.) Steven also alleges that "[b]eginning on July 22, 2019, Defendants began withholding the tips to which [he] was entitled." (*Id.* ¶ 44.) Additionally, he alleges that he was a driver for Defendants and was unpaid for his "driving duties." (*Id.* ¶¶ 46–49.) Specifically, Steven alleges that Defendants requested that he "drive his co-workers to work and was promised compensation therefor, at the rate of $20, $35, or $50, depending on whether Steven drove his or company vehicle; and whether Steven was provided the Defendants' E-ZPass tag." (*Id.* ¶ 46.) As of the filing of the Complaint, Steven alleges he is owed approximately $13,575 because of Defendants' conduct. (*Id.* ¶¶ 45, 49.)

Plaintiff Mooseok was also hired by Defendants as a waiter. (*Id.* ¶ 50.) His employment began on or about June 1, 2019, and he was terminated on or about February 9, 2020. (*Id.* ¶¶ 50–

51.) Mooseok "worked on average 20 hours per week." (*Id.* ¶ 55.) At all relevant times, he was required to work for 10 hours a day with a one-hour break. (*Id.* ¶ 53.) Further, Mooseok "was scheduled to work two (2) days per week, primarily on the weekends." (*Id.* ¶ 54.) Like Steven, Mooseok alleges that during his employment, Defendants failed to notify him that "any portion of his tip may be deducted from his minimum wage, or that the tips he would receive [would not] be credited towards his minimum wage" and "that Defendants withheld the tips to which [he] was entitled." (*Id.* ¶¶ 56–57.) As of the filing of the Complaint, Mooseok alleges he is owed approximately $12,000. (Compl. ¶ 59.)

Yoo was hired as a kitchen worker. (*Id.* ¶ 60.) Yoo's employment began on or about July 2019 and she was terminated on or about February 9, 2020. (*Id.* ¶¶ 60-61.) Yoo was "required to work eleven (11) hours per day, with a one-hour break, six (6) days per week." (*Id.* ¶ 60.) She was paid a weekly salary of either $1,500 or $1,000. (*Id.* ¶¶ 63–64.) Further, she understood that her weekly salary would be compensation for a forty-hour week. (*Id.* ¶ 66.) Based on these terms, Yoo alleges she "never received any overtime compensation for any hours she worked in excess of forty (40) in a given week" and that she was not compensated "for her work performed between July 29, 2019, through November 3, 2019, and between February 2, 2020, through February 9, 2020." (*Id.* ¶¶ 67-69.)

Plaintiffs collectively filed this suit alleging six causes of action: (1) Unpaid minimum wages under the Fair Labor Standards Act (First Cause of Action) (*Id.* ¶¶ 70–78); Unpaid minimum wages under the New Jersey Wage and Hour Law (Second Cause of Action) (*Id.* ¶¶ 79–83); Unpaid Overtime Wages under the Fair Labor Standards Act (Third Cause of Action) (*Id.* ¶¶ 84–92); Unpaid Overtime Wages under the New Jersey Wage and Hour Law (Fourth Cause of Action) (*Id.* ¶¶ 93–97); Unpaid Tips or Gratuities under the Fair Labor Standards Act (Fifth Cause of Action)

(*Id.* ¶¶ 98–104) and; Unpaid Tips or Gratuities under the New Jersey Wage and Hour Law (Sixth Cause of Action) (*Id.* ¶¶ 105–109.)

### B. Procedural Background

On April 30, 2020, Plaintiffs filed their Complaint. On May 1, 2020, summonses were issued that included a notice that failure to respond would result in a default. (ECF No. 2.) Defendants were each served with the Summons and Complaint on May 5, 2020. (ECF Nos. 9,10.) Accordingly, Defendants' answers were due on May 26, 2020. On May 23, 2020, Defendant Odzelashvili requested additional time to answer the Complaint. (ECF No. 3.) On May 26, 2020, the Court granted his extension request and ordered Defendant Odzelashvili to answer the Complaint by June 16, 2020. (ECF No. 5.)

On June 16, 2020—the date Defendant Odzelashvili's answer was due—he filed another letter requesting an additional extension of time to answer the Complaint. (ECF No. 6.) According to Plaintiffs, following this second extension request, Defendant Odzelashvili informally contacted them seeking to resolve the case. (Decl. of Seokchan Kwak ¶ 10.) On June 17, 2020, the Court granted Defendant Odzelashvili's second request for an extension to answer, thereby extending the deadline for both Defendants to answer the Complaint to July 22, 2020. (ECF No. 6.) On July 22, 2020, neither of the Defendants answered the Complaint.

On July 23, 2020, Plaintiffs requested that the Clerk of the Court enter default against Defendants. (ECF No. 12.) The Clerk entered default that day. In response to correspondence from Defendant Odzelashvili, the Court extended Defendant Odzelashvili's deadline to respond to the Complaint by September 15, 2020. (ECF No. 13.) On September 15, 2020, he again failed to file an answer. On October 7, 2020, Plaintiffs renewed their request for default (ECF No. 14), which the Clerk then entered on the same day. On January 7, 2021, Plaintiffs filed the present

Motion for Default Judgment. (ECF No. 15.) As of the date of this Opinion, neither of the Defendants has responded to the Complaint and Defendant Hanok 18, LLC has yet to appear.

## II.     LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs default. Fed. R. Civ. P. 55. Pursuant to the Rule, the clerk must enter default against a party who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After this, a plaintiff may seek entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2). *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). *See also Nationwide Mutual Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521, n.1 (3d. Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be entry of default as provided by Rule 55(a).").

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citation omitted). However, "entry of default judgments is disfavored as decisions on the merits are preferred." *Animal Sci. Prods. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) (citing *Hritz*, 732 F.2d at 1181). In other words, the district court must remain mindful that entry of default "is a sanction of last resort." *Id.* (citing *Super 8 Motels, Inc v. Kumar*, Civ. No. 06-5231, 2008 WL 878426, at *3 (D.N.J. Apr. 1, 2008)).

"Before entering default judgment, the court must address the threshold issue of whether it has subject matter jurisdiction and personal jurisdiction over the parties." *Maersk Line v. TJM Int'l L.L.C.*, 427 F. Supp. 3d 528, 532 (D.N.J. 2019) (citing *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). After that, "[i]n assessing whether the entry of default judgment is warranted, the court utilizes a three-step analysis, under which the court must determine (1)

whether there is sufficient proof of service[;] (2) whether a sufficient cause of action was stated[;] and (3) whether default judgment is proper[.]" *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 600–01 (D.N.J. 2016)

Before determining whether imposing the extreme sanction of default is proper, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). An entry of default judgment is not a right that plaintiffs are entitled to and a "defendant's failure to appear or answer does not vitiate" the court's responsibility to examine the complaint. *Paniagua Grp., Inc.*, 183 F. Supp. 3d at 600. As part of a court's entry of default judgment "the factual allegations of the complaint, except those relating to the amount of damages" are accepted as true. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

### III.   DISCUSSION

#### A. Subject Matter Jurisdiction and Personal Jurisdiction

Plaintiffs allege violations of the Fair Labor Standards Act; therefore, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337. The Court exercises supplemental jurisdiction over Plaintiffs' New Jersey Wage and Hour Law claims under 28 U.S.C. § 1367. The Court therefore finds it has subject matter jurisdiction.

The Court is also satisfied it has personal jurisdiction over Defendants because the Complaint includes allegations, which the Court accepts as true in this context, asserting that

6

Defendant Odzelashvili is a resident of New Jersey and Defendant Hanok 18, LLC is incorporated in New Jersey and its principal place of business is also located here. (Compl. ¶¶ 2–3, 6.)[1]

### B. Sufficient Proof of Service

Before granting default judgment, the Court also considers whether process was properly served on Defendants. As set forth above, the docket reflects that Defendants were personally served on May 5, 2020. This was accomplished by hand-delivering a copy of the summons and Complaint on Natalia Tikovska at the restaurant operated by Defendants and located at 415 State Road 18 Suite 20, East Brunswick, New Jersey. (*See* Business Report dated March 10, 2020, from New Jersey Division of Revenue and Enterprise Services, attached as Exhibit B to the Declaration of Seokchan Kwak, Esq., ECF No. 15-8.) Proof of service is further confirmed by the fact that Defendant Odzelashvili subsequently contacted the Court to seek extensions of his deadline to respond to the Complaint. The Court therefore finds that service on Defendants was proper.

### C. Sufficient Cause of Action

Before entering default judgment, the Court must also review the Complaint and determine whether the "unchallenged facts constitute a legitimate cause of action." *DirecTV, Inc. v. Asher*, Civ. No. 03–1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63). The Court must also accept Plaintiffs' "well-pleaded" allegations as true." *Comdyne I, Inc.*, 908 F.2d at 1146.

Here, Plaintiffs allege violations under the Fair Labor Standards Act and the New Jersey Wage and Hour laws. (Compl. ¶ 1.) Under the Fair Labor Standards Act, every employer is

---

[1] Even if the Court could not assume the truth of Plaintiffs' jurisdictional allegations with respect to the LLC Defendant, the Court notes that the Business Report appended to Plf's counsel's declaration indicates that the LLC Defendant is indeed incorporated in New Jersey and that its principal place of business (its restaurant) is in New Jersey. (*See* Business Report dated March 10, 2020, from New Jersey Division of Revenue and Enterprise Services, attached as Exhibit B to the Declaration of Seokchan Kwak, Esq., ECF No. 15-8.)

required to pay each of their employees a minimum wage. More specifically, employers are required to pay their employees "who in any workweek [are] engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a wage of not less than: "(A) $5.85 an hour, beginning on the 60th day after the date of enactment of the Fair Minimum Wage Act of 2007 . . . and (C) $7.25 an hour, beginning 24 months after that 60th day." 29 U.S.C. § 206(a)(1) (internal citation omitted). The Act also requires an individual employed "for a workweek longer than forty hours" must receive compensation "in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a).

Under the New Jersey Wage and Hour Law, "each employer shall pay to each of his employees['] wages at a rate of not less than $8.85 per hour as of January 1, 2019[;] on July 1, 2019, the minimum wage shall be $10.00 per hour; on January 1, 2020, the minimum wage shall be $11.00 per hour[.]" N.J.S.A. 34:11-56(a)(4). Further, under the New Jersey law, employees must be paid "[o]vertime at 1½ the regular hourly wage" for every hour "worked in excess of 40 hours in any week." N.J.S.A. 12:56-11.3. The Wage and Hour Law also prohibits an employer "from using an employee's tips . . . for any reason other than as wages or in furtherance of a valid tip pool." N.J.S.A. 12:56-3.5(g).

First, this Court will address the claims and arguments of Steven. Between 2019 and 2020, Steven was employed as a waiter at Defendants' restaurant. (Compl. ¶¶ 31–32.) During that time, Steven was paid "$70 per day for 10 or 10.5-hour workdays and worked five (5) to seven (7) days per week." (*Id.* ¶¶ 31–41.) This pay, when calculated as an hourly rate, amounts to less than $7 per hour, which falls below the required minimum hourly wage of $8.85 for 2019 and $11 for 2020. (Moving Br. at 9.) Additionally, there was no tip credit to offset the Defendants'

underpayment.  (*Id.*; Compl. ¶ 44.)  In addition to its underpayment, Defendants also did not pay Steven any overtime premium after Steven worked at least fifty hours a week; exceeding the forty-hour minimum requirement.  (Compl. ¶¶ 34–40.)  Defendants also failed to pay Steven for "the majority of his additional driving duties."  (*Id.* ¶¶ 46–49.)

Next, this Court will address Mooseok's allegations and arguments.  Mooseok alleges that between 2019 and 2020 he was employed as a waiter at Defendants' restaurant.  (*Id.* ¶¶ 50-51.)  According to Mooseok, he was paid "$50 per day for 10-hour workdays," however this is below the minimum wage requirement under the law.  (*Id.* ¶ 57; Moving Br. at 10.)  Mooseok also alleges that Defendants never paid tips collected.  (*Id.* ¶ 58)

Finally, the Court will address the allegations and arguments of Yoo.  Yoo alleges that she was employed as a salaried kitchen worker at Defendants' restaurant.  (*Id.* ¶¶ 63-64.)  Yoo alleges she was paid a weekly salary of $1,000.  (*Id.*)  Between July 29, 2019, through November 3, 2019, and during the week of February 9, 2020, Yoo alleges that she was not paid for her work.  (*Id.* ¶¶ 68-69.)  Yoo further argues that while she worked "approximately fifty (50) or sixty (60) hours per week, she was never paid any overtime premium." (Moving Br. at 10.)  Accordingly, accepting their allegations as true, Plaintiffs adequately allege that they are entitled to unpaid minimum wage, unpaid regular wage, tips withheld, unreimbursed expenses, and liquidated damages under the Fair Labor Standards Act and the New Jersey Wage and Hour Law.

### D. Whether Default Judgment is Proper

Next, the Court considers whether default judgment is proper. Here, Defendants are subject to default because they have failed to respond to the Complaint.  In the absence of a responsive pleading, there is nothing in the record to indicate that Defendants have any meritorious defenses.

Second, Defendants' failure to respond and litigate this action would leave Plaintiffs without a remedy to obtain damages that resulted from Defendants' underpayment, failure to make overtime payments, and failure to pay Steven for his driving services. Therefore, this Court finds that Plaintiffs have been prejudiced and will continue to be further prejudiced if default judgment is not granted.

Third, this Court finds that Defendants are presumably culpable due to their failure to respond to the Complaint despite numerous extension requests. *See Slover v. Live Universe, Inc.*, Civ. No. 08-02645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("[d]efendant is also presumed culpable where it has failed to answer, move, or otherwise respond"). Here, Defendant Odzelashvili made three separate extension requests and failed to answer the Complaint for over eight months. As of the date of this Opinion, neither Defendant has responded to the Complaint. Further, Defendant Hanok 18, LLC has yet to appear. Therefore, given that Plaintiffs satisfy all of the necessary requirements, the Court will enter default judgment for Plaintiffs.

### E. Damages

Having found default judgment proper under these circumstances, the Court turns to Plaintiffs' claims for damages. As stated above, although the factual allegations of the Complaint will be taken as true, the amount of damages must still be proven. *Comdyne I, Inc.*, 908 F.2d at 1149. Courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment. *Paniagua Grp., Inc.,* 183 F. Supp. 3d at 605. In determining the amount of damages, the Court may conduct a hearing, but one is not necessary if it "ensure[s] that there [is] a basis for the damages specified in the default judgment." *Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). Further, it is

typical and an appropriate exercise of judicial power for "a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Id.* (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

To support their Motion, Plaintiffs submitted individual declarations, as well as a declaration from their attorney, with spreadsheets attached as exhibits. (ECF Nos. 15-3, 15-4, and 15-5). First, the Court will address Steven's assertions of unpaid wages, tips, and driving wages. (Decl. of Steven Lee. ¶ 28, ECF No. 15-3.) Steven's spreadsheets show that he is owed compensation and wages totaling $88,112.65. (*See* Spreadsheet of Steven Lee on Unpaid Tips and Driving Wages, attached as Exhibit C to the Declaration of Steven Lee at 6, ECF No. 15-9; Spreadsheet of Steven Lee on Unpaid Daily Wages, attached as Exhibit E-1 to the Declaration of Steven Lee at 2, ECF No. 15-11.) Of that amount, Steven asserts, and the spreadsheet show that $29,261.77 are from unpaid wages, and $8,930.00 are from unpaid driving wages owed. (Spreadsheet of Steven Lee on Unpaid Tips and Driving Wages, attached as Exhibit C to the Declaration of Steven Lee at 6.) Additionally, Steven's spreadsheet shows he was owed $49,897.55 in unpaid daily wages. (Spreadsheet of Steven Lee on Unpaid Daily Wages, attached as Exhibit E-1 to the Declaration of Steven Lee at 2.) However, after calculating the unpaid wage, tips, and driving wages—using Steven's spreadsheets—the Court concludes Steven is owed $88,089.32.

Next, the Court address the unpaid wages and tips Mooseok states is owed. (Decl. of Mooseok Lee ¶ 19, ECF No. 15-4.) Mooseok's spreadsheet submission demonstrates Defendants owe him $43,337.98. (*See* Spreadsheet of Mooseok Lee on Unpaid Wages and Tips, attached as Exhibit E-2 to the Declaration of Mooseok Lee at 2, ECF No. 15-12.)

Last, this Court will address Yoo's assertions of unpaid wages and overtime wages. (Decl. of Mi Hyun Yoo ¶ 20, ECF No. 15-5.) Yoo's spreadsheet shows she is owed $108,500 in unpaid wages and liquidated damages. (*See* Spreadsheet of Mi Hyun Yoo on Unpaid Wages and Tips, attached as Exhibit E-3 to the Declaration of Mooseok Lee at 2, ECF No. 15-13.) After the Court calculated Yoo's total damages using her spreadsheet submission, she is owed $108,410 not $108,500.

Finally, Plaintiffs' attorneys say they are owed attorneys' fees and costs. (Decl. of Seokchan Kwak ¶ 23, ECF No. 15-6.) Counsel's invoice shows they are owed a total $13,616.25. (*See* Invoice from Kim, Cho, & Lim, LLC, attached as Exhibit F to the Declaration of Seokchan Kwak at 5, ECF No. 15-14.)

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Motion for Default Judgment will be granted. Judgment in the amounts set forth above will be entered in favor of Plaintiffs.[2] An appropriate Order follows.

 s/ Zahid N. Quraishi  
**HON. ZAHID N. QURAISHI**  
**UNITED STATES DISTRICT JUDGE**

---

[2] Defendants John Jane Does 1-10 and XYZ CORP. 1–10 will also be dismissed because they have never been identified. *See Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998) ("The case law is clear that '[f]ictitious parties must eventually be dismissed, if discovery yields no identities,'. . . and that an action cannot be maintained solely against Doe defendants.")